Arnold v. Arnold.

C. L. ARNOLD, *Appellant,* v. MATILDA ARNOLD, *Appellee.*

No. 16,726.

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Divorce Decree Vesting Legal Title to Home in Trust for Use of Children During their Minority.* A judgment for divorce gave the custody of minor children to their mother, and provided that the legal title to the homestead should be vested in her for the use and benefit of the children or the survivor of them until the youngest should come to the age of majority, to be held and used as the home of the mother and children until that time. It is *held,* that the judgment did not give to the mother the title in fee simple, but only the use of it for the purpose declared and for the time limited therein.

2. EJECTMENT—*Principal in Possession of Land Purchased by Agent—Repudiation of Agreement—Reimbursement of Agent—Lien.* After the youngest child became of age the father claimed to own the land referred to in the decree above mentioned, having obtained the patent therefor, and the mother, still being in possession, claimed to own it absolutely under the decree. In this situation the mother sought the assistance of her son to procure for her a conveyance from his father as a compromise of the conflicting claims. The son procured the conveyance to himself, according to the agreement with his mother, and offered to make a conveyance to her for the sum she had authorized him to give, although he had in fact paid less, but she refused to pay and repudiated the agreement. The son then brought an action of ejectment against the mother. It is *held,* that a judgment for the mother is erroneous, and that the son, upon delivery of a proper conveyance, should recover whatever sum is found to be equitably due to him, and if not paid should have a lien upon the land therefor.

Appeal from Marion district court. Opinion filed December 10, 1910. Reversed.

*A. M. Jackson,* and *A. L. Noble,* for the appellant.

*L. F. Keller,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action is in ejectment to recover eighty acres of land. The controversy is between C. L. Arnold, the plaintiff, and Matilda Arnold, his mother. This tract was school land, for which a certificate was issued in the year 1881, which was assigned to J. G. Arnold, the father of the plaintiff, in the year 1887. He occupied the land with his family until an action for divorce was commenced by his wife, Matilda, in which a judgment was rendered on June 8, 1889, as follows:

"That the plaintiff be and is hereby divorced from the said defendant and that she do have the complete, absolute and full control of said minor children during their minority, and that the legal title to said above-described homestead real estate be vested in the plaintiff in trust for and to the use and benefit of said children and any that may be hereafter born unto the plaintiff and defendant, or the survivors of them, until the youngest of said children of the survivor shall come to the age of maturity, to be held and used as the home of the plaintiff and the said children until said children or the youngest survivor of them shall come to his majority; and it is further ordered that said plaintiff do have all of the aforesaid personal property, including all growing crops on said farm, and that plaintiff do have the control of the contract of purchase of said land, and is authorized to perfect and complete the said purchase."

The judgment also provided that J. G. Arnold should pay the taxes on the land.

After the divorce Mrs. Arnold and her children continued to reside upon the land as their home. She still occupies it with two of her children, all of whom became of full age before this action was commenced. She has made nine payments to the state, of $8.64 each, on the

Arnold v. Arnold.

land, paid taxes for four years, amounting to $57.02, and has made improvements upon the land. On January 30, 1901, J. G. Arnold paid the balance due on the certificate, and a patent was then issued to him, and he afterward claimed to be the owner of the land. In consequence of this claim Mrs. Arnold wrote to her son, the plaintiff, the following letter:

"MARION, KAN., February 1, 1909.

"DEAR LESS: As I wrote you a few days ago, I will not write much this time. I hope you are all well. We are well except colds. We had the worst blizzard Friday of snow and dirt. It has been pretty cold to-day and yesterday, but is growing warmer this evening. Ruth and Ellery have gone to church to Youngstown this evening. I am alone, and thought I would write you a few lines to pass· off the time. The snow looks like large banks of dirt. I expect we will have some bad roads when this snow leaves. I did not go to Sunday school to-day. I thought it pretty cold to go out.

"Well, Less, this business concerning the home here will soon have to be settled. I am going to give your pa his choice, one way or the other, to come to settlement. I don't know anything of his whereabouts and take this plan in sending this word in writing to you. If $1100 will satisfy him, I will give that amount; $1100 was what we paid for the eighty. Let me know and hear from you what he says about it. I put $1200 improvements on the place, and will fight for my rights if settled by law. So let me hear soon.

"With love to Georgia and little ones,

YOUR MOTHER."

After receiving this letter the ·plaintiff had an interview with his mother concerning the matter, and thereupon he made an arrangement with his father for ˜a conveyance of the land for $900, paying $100 down, and then entered into an agreement with his mother as follows:

"MARION, KAN., February 13, 1909.

"CONTRACT—Charles L. Arnold and Matilda Arnold.

"This agreement, entered into this 13th day of February, 1909, by and between mother and son, as follows:

"Charles L. Arnold of Winfield, Kan., of the first

part, hereby covenants and agrees to procure from his father, J. G. Arnold, an abstract of title and a quit-claim deed to the S. ½ S. W. ¼ (south half southwest quarter) of section thirty-six (36), township nineteen (19), range four (4) east of the sixth principal meridian, containing eighty acres more or less according to the U. S. government survey.

"And after such acquirement, to then in turn furnish said abstract and a quitclaim deed to said property to his mother, Mrs. Matilda Arnold.

"The consideration of this quitclaim deed from Charles L. Arnold and wife to his said mother, Mrs. Matilda Arnold, is eleven hundred dollars, to wit, one hundred dollars upon the execution of this contract and one thousand dollars upon the delivery to said Mrs. Matilda Arnold of the quitclaim deed to said south half southwest quarter of section thirty-six, township nineteen, range four, in Marion county, Kansas.

"It is distinctly understood that these transactions are for the sole purpose of transferring the father's interest in this land and vesting it in the mother, without affecting in any degree the interest of this son as an heir.     C. L. ARNOLD,
MRS. MATILDA ARNOLD."

After this agreement had been made the plaintiff obtained from J. G. Arnold, his father, a conveyance to himself of the land in question for a consideration of $900, and at the same time a previous agreement for the support of the father by the son in consideration of a conveyance of forty acres of this land, which had been made on February 2, 1901, was canceled. Afterward the plaintiff and his wife executed a conveyance of this eighty-acre tract to the defendant, Matilda Arnold, expressing a consideration of $1100, and offered to deliver it to her on payment by her of $1000, the balance of the sum named in the contract. Mrs. Arnold refused to accept the deed or make the payment, and appears to have repudiated the contract.

Mrs. Arnold testified that her son had offered her the deed and that she did not accept it because "it was all a false pretense." She further said:

"Ques. What was your purpose in carrying on these

negotiations with your son?  Ans.  For the purpose of compromising the matter in settlement.

"Q.  What is the fact in regard to your husband; has he been claiming all these years that he still owned the land?  A.  Yes, sir; he has claimed it all these years, and tried to get it from me for several years.

"Q.  State whether there has been a controversy between you and your husband ever since the divorce was granted?  A.  Yes, sir; he claimed it was all his.

"Q.  What did you claim?  A.  That I had a right there and that it belonged to me.

"Q.  What was the object of this controversy between you and your son?  A.  For the purpose of settling and stopping all controversy between us about it."

Matilda Arnold claimed to own the land under the decree.  J. G. Arnold claimed to own it under the certificate of purchase and the patent.  It appears that Mrs. Arnold desired to have the controversy settled, and for that purpose entered into the contract with her son, who obtained the title accordingly.  The contention of the defendant now is that the land was hers absolutely by the terms of the decree of divorce.  The claim of J. G. Arnold was that she held it in trust until the youngest child became of age, and that all her interest terminated at that time.  The language of the decree is clear and leaves no room for construction; it vests the legal title in her as trustee for the use and benefit of the children until the youngest shall come to the age of maturity, to be used as a home for her and her children until that time.  The trust, the use and the limitation are clearly stated.  It is said that this was an inequitable provision for the wife, who had the burden of supporting the family, but the court on the trial of this action could not reëxamine the equities of a decree made more than twenty years before, in which both parties had acquiesced and under which the defendant now claims, and of course did not attempt to do so, but construed the decree as vesting the fee in Mrs. Arnold. There was in any event a substantial controversy between the defendant and her former husband as to the

legal effect of the decree. In this situation the defendant sought the aid of her son to effect a settlement. He proceeded to do as requested, and so far as the evidence shows carried out the agreement with his mother. He paid $900 to his father, and obtained the title, as he had agreed. It may be that he is not entitled to more than he actually paid, but that is a matter that should be determined in a further proceeding.

The judgment given for the defendant must be reversed, but, in view of the fact that the plaintiff acted as agent for his mother in procuring the title from his father, judgment can not be entered in his favor for the recovery of the land; nor should he be left without relief, but should have whatever is found to be equitably due to him upon the delivery of a proper conveyance to his mother. If the amount found to be due to the plaintiff is not paid at a time to be fixed he should have a lien upon the land therefor, to be enforced by sale in the usual way. That all the rights and equities of the parties may be fully adjusted, leave should be given to amend pleadings if found necessary.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion.